William T. O’Connell, J.
This is an action by the plaintiff to recover damages for personal injuries arising from food poisoning allegedly suffered after consuming food at defendants’ restaurant on August 12, 1962. Since the causes of action are brought in both negligence and contract, the plaintiff has elected to proceed on the breach of warranty action (Personal Property Law, § 96, in effect August 12, 1962).
The plaintiff is a bus driver employed by “ Trailways ”, an interstate bus company engaged in this instance of transporting passengers for hire between Washington, D. C. and New York City.
At about 1:00 a.m. on August 12, 1962 the plaintiff received a phone call at his home in suburban Washington, D. C. directing him to report for work at 2:30 a.m. At the appointed time and usual place of embarkation, the plaintiff left Washington, D. G. with a busload of passengers and arrived without incident in New York City at 7:30 a.m.
After garaging the bus, the plaintiff went to the defendants’ restaurant, Van Dyck Food Shop located at 268 West 43rd Street, New York City, where he had a breakfast, consisting of two poached eggs, toast, butter and milk. Following this meal, the plaintiff went directly to Hotel Dixie where he rested for the day until 3:30 p.m. when he received a call to report for work at the bus terminal at 5:30 p.m. Following the phone call, the plaintiff went to the same restaurant, Van Dyck Food Shop at 268 West 43rd Street, New York City and had a dinner, consisting of baked ham, baked potatoes, apple sauce and coffee. Two other Trailways’ bus drivers, Carl Oberdick and Ted McGowan, ate with him but neither one of them had the ham dinner. Plaintiff consumed no other food on August 12, 1962. Following dinner which was completed about 5:00 p.m. plaintiff went to the Port Authority Bus Terminal from which he left passenger-laden, bound for Washington, D. C. at 6:10 p.m. on August 12, 1962.
At about 8:00 p.m. the plaintiff had reached the Delaware Memorial, Bridge and because of an intense headache, stopped *651 and took two aspirins. He then proceeded and after approximately 20 minutes reached Elkton, Maryland where he was forced to stop the bus because of a violent attack of nausea and vomiting. The plaintiff testified that he drove the bus to the edge of the road and from the entranceway vomited repeatedly onto the side of the road. When this attack temporarily subsided, the plaintiff resumed driving south and within a half hour thereafter, he began to feel worse. He felt severe pains in the stomach and abdomen. He stopped again at Perryville, Maryland when he again vomited violently and repeatedly.
When these attacks had subsided temporarily, he resumed his trip south and within a half hour, feeling severe pains in his stomach and abdomen and being extremely nauseous, he was forced to stop his bus at a gas station in Aberdeen, Maryland. He testified that he went into the rest room, vomited repeatedly and suffered a prolonged attack of diarrhea continuing for over 20 minutes.
Thereafter, plaintiff testified that a serviceman riding on the bus assisted him from the rest room to the bus where he was forced to use the bus rest room because of renewed attacks of vomiting and diarrhea. While plaintiff had been suffering from the attacks in the rest room of the gas station, another bus going south had taken his passengers on to their destination. At this point, the Aberdeen police arrived and the plaintiff ivas placed on a stretcher and taken in an ambulance to Harford Memorial Hospital in Havre de G-race, Maryland.
The various stops which the plaintiff was required to make with his bus due to his recurring attacks of nausea, vomiting and diarrhea are recorded in his daily log for August 12, 1962 which was admitted in evidence. Plaintiff testified this was a record which he was required to make by both the Interstate Commerce Commission and his employer in the regular course of his duties as a bus driver.
The plaintiff testified he was admitted to the hospital on a stretcher and was examined by Dr. Peter P. Bodman. He further testified that during his examination he was forced to leave the examining room because of continued bouts of vomiting and diarrhea. This Avas confirmed by Dr. Bodman.
At the trial, plaintiff introduced the testimony of Dr. Bodman, the examining and treating physician. Dr. Bodman testified that he had been practicing since 1941, served four years on the staff of the United States Marine Hospital at Stapleton, Staten Island, N. Y,, and since 1947 had been in practice in Maryland and connected Avith Harford Memorial Hospital and that in the course of a year during the period from 1947 to October, 1965 *652 [sic] (date of interrogatories), he had averaged between 10 or 12 food poisoning cases a year.
Dr. Rodman testified that, based on the fact that the plaintiff had been in good health when he arrived in New York on August 12,1962, that his last meal in New York was eaten in the defendants’ restaurant at about 5:00 p.m. that the meal prior to that was breakfast in the defendants’ restaurant at 8:00 a.m., that no other food was eaten thereafter, that within three and a half to four hours the plaintiff had had attacks of nausea followed by vomiting and diarrhea and based on plaintiff’s condition at the time Dr. Rodman examined him and on the facts set forth in the hospital record, it was his opinion that the competent producing cause of the plaintiff’s symptoms and condition at the time he examined him upon admission to Harford Memorial Hospital was food poisoning due to some item of food in the meal which plaintiff ate in defendants’ restaurant on August 12, 1962. Dr. Rodman also eliminated food eaten 36 to 48 hours prior to plaintiff’s illness as a cause thereof. Plaintiff also testified that on the day preceding August 12, 1962, he was at home and ate all his meals with his family and that no illness was suffered in his family subsequent to the eating of those meals. Plaintiff also testified that in the last five-year period during which he had been employed by Trailways he had not been under the care of a doctor except for sinus treatments.
At the trial the plaintiff appeared and testified. Defendants put in no case. The brief submitted by the attorney for the plaintiff has assisted the court in coming to a conclusion. I regret that I cannot say the same about the defendants’ brief. Some of the cases referred to are not germane; others refer to cases that are not concerned with food poisoning cases. Some cannot be found (wrong citations). However, there is one case that the court will comment on, viz., Pendola v. M. & S. Cafeteria (206 Misc. 595) in which the court denied plaintiff relief and suggested certain standards of required proof in such cases. The court stated (p. 596): “ Proof may be supplied by circumstantial evidence, but the circumstances must be such as to lead to the logical inference or conclusion that the food allegedly eaten by plaintiff was tainted.”
In the case at bar (1) plaintiff testified that the only meals he ate on August 12, 1962 were eaten in defendants ’ restaurant; (2) plaintiff testified that the day prior, he ate all his meals at home with his family and that subsequently there was no illness in his family; (3) and that in the five-year period he was employed by Trailways, the only illness he bad was a sinus condition; and (4) there was expert testimony by Dr. Rodman *653 that the competent producing cause of plaintiff’s illness was the food eaten in defendants’ restaurant on August 12, 1962.
In the Péndola case the plaintiff’s doctor did not testify, as did Dr. Rodman in this case, that the competent producing cause of plaintiff’s illness was the food eaten in defendants’ restaurant; and (5) as to the laboratory results in this case: As my opinion states, the vomiting and diarrhea started at Elkton, Maryland. By the time the plaintiff arrived at the hospital, the stool was watery. There were no solids. Accordingly, the negative analysis would not be helpful in coming to a conclusion. However, in finality, Dr. Rodman was present during the throes of plaintiff’s agony, and we have the doctor’s testimony as to his conclusions.
Accordingly, the court finds the evidence preponderates in favor of the plaintiff. Judgment in favor of the plaintiff in the sum of $2,600.